**Mary A. HOYLE, Appellant (Defendant Below),**

v.

**Kenneth W. HOYLE, Appellee (Plaintiff Below).**

**No. 3–584 A 142.**

Court of Appeals of Indiana, Third District.

Jan. 31, 1985.

Howard S. Grimm, Jr., Fort Wayne, for appellant.

David K. Hawk, Thomas J. Felts, Burt, Blee, Hawk & Sutton, Fort Wayne, for appellee.

HOFFMAN, Judge.

On December 28, 1983, the trial court dissolved the marriage of Mary and Kenneth Hoyle. Appellant Mary appeals the decision of that court and raises the following issues for review:

(1) whether the trial court abused its discretion in awarding custody of the two minor children to Kenneth;

(2) whether the trial court abused its discretion in ordering Mary to pay $84.00 per week for the support of the minor children;

(3) whether the trial court abused its discretion in awarding only one income tax exemption to Mary and the other to Kenneth;

(4) whether the trial court erred in ordering Mary to pay $1,851.96 for her share of the accumulated household and child-related expenses pursuant to a stipulation entered into by the parties; and

(5) whether the trial court abused its discretion in dividing the equity in the marital home.

Mary first contends the trial court abused its discretion by awarding custody of the couple's two minor children to Kenneth. She correctly points out that the trial court's custody decision is guided by IND.CODE § 31–1–11.5–21; however, she maintains that as the trial court's findings of fact did not specifically address those factors, there is no evidence that they were considered. Mary also claims that a review of the evidence does not support the trial court's conclusion.

While IND.CODE § 31–1–11.5–21(a) sets forth the factors which the trial court should consider when making its custody order,[1] it does not require specific findings on each factor. *In re Marriage of Ford* (1984), Ind.App., 470 N.E.2d 357. In addition, this Court will only reverse the trial court's custody determination if that determination is clearly against the logic and effect of the facts and circumstances before the court, so as to constitute a manifest abuse of discretion. *Keramida v. Zachmanoglou* (1984), Ind.App., 470 N.E.2d 769; *In re Marriage of Ford, supra.*

Considering those factors in the statute, there was evidence that the Hoyles' marriage produced two children: a son, Derek, who was almost eight years old at the time the petition for dissolution was filed, and a daughter, Bethany, who was almost two years old at that time. Kenneth stated that he wants custody of the children because he is able to provide them with love, care, attention, and their basic needs. Mary stated that she also wants custody of the children. The psychologist who interviewed and tested Mary, Kenneth, and Derek, stated that Derek wants to be with Kenneth and that Bethany is too young to interview.

The psychologist also stated the bond between Derek and Kenneth is quite close and is better than that between Derek and Mary. He further stated that Derek and Bethany have a very close sibling relationship and that the children should be kept

---

1. The statute provides:

"Sec. 21. Child Custody Order: Best Interests of Child. (a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:
(1) the age and sex of the child;
(2) the wishes of the child's parent or parents;
(3) the wishes of the child;
(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
(5) the child's adjustment to his home, school, and community; and
(6) the mental and physical health of all individuals involved."

together. Kenneth and Mary agree that the children should be together. Neighbors and friends testified that the relationship between Kenneth and the children was very good. Both Kenneth and Mary have jobs which are flexible enough that they can leave or take a day off whenever an emergency with the children arises. Other testimony revealed that Derek is a bright boy, doing well, and enjoying school.

Kenneth testified that both he and Mary have excellent physical health. In addition he stated that he has excellent emotional health. Similarly, Mary stated that she is emotionally sound. The testimony of the psychologist, however, was that Mary has a character disorder, while Kenneth does not. Mary's character disorder, histrionic personality disorder, involves her emotional defense systems. And again, his conclusion was that custody of both children should be awarded to Kenneth.

■ Based on the evidence, the trial court did not abuse its discretion in awarding custody to Kenneth.

■ Mary next argues that the trial court abused its discretion in ordering her to pay $84.00 per week for child support. Determinations of child support will not be disturbed unless the trial court abused its discretion or acted contrary to law. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386. IND.CODE § 31–1–11.5–12(a) lists those factors which the trial court is to consider in determining support payments.[2]

The evidence presented at trial revealed that Kenneth received net pay of $237.65 on a weekly basis, and that Mary received net pay of $472.00 every two weeks, which comes to $236.00 each week. There was also evidence that Kenneth's expenses while living with Bethany and Derek in the marital home totaled $1,326.18 per month, which equals $306.04 per week.[3] This amount would maintain the children's standard of living at the level it had been during the marriage. Mary stated that her monthly expenses at the time of trial included her life insurance premium and her car payment. However, she failed to show the trial court just what those expenses totaled.

■ From the evidence presented at trial and the court's determination with respect thereto, there is no showing that the trial court's order of support payment amounted to an abuse of discretion.

Mary's third argument is that the trial court abused its discretion in awarding her an income tax exemption only for Bethany, while awarding the exemption for Derek to Kenneth.

■ In a dissolution case, the trial court is vested with the jurisdiction to determine as part of the custody and support issues which parent is to receive the right to claim the children as tax exemptions. Because the power to grant tax exemptions is related to the power to determine support payments, the order of the trial court is likewise reviewable only for an abuse of discretion. *Hiland v. Hiland* (1984), Ind. App., 467 N.E.2d 1253.

■ As the grant of tax exemptions is so clearly tied to determination of support payments, the trial court is bound to consider the factors enumerated in IND.CODE § 31–1–11.5–12(a). Having reviewed the

---

**2.** The section provides:

"Sec. 12 Child Support. (a) In an action pursuant to section 3(a), (b), or (c), the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:
(1) the financial resources of the custodial parent;
(2) standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) physical or mental condition of the child and his educational needs; and
(4) financial resources and needs of the noncustodial parent."

**3.** $1,326.18 per month × 12 months = $15,914.16 per year $15,914.16 per year ÷ 52 weeks = $306.04 per week

evidence relating to those factors in prior portions of this opinion, it is not necessary to restate it. As there is evidence on those factors and the award of tax exemptions is not against the logic and effect of the evidence, the trial court did not abuse its discretion in making this award.

Mary's fourth contention is that the trial court erred when it ordered her to pay $1,851.26 according to a stipulation entered into by the parties on the day that the dissolution proceedings were commenced. That stipulation calls for Mary and Kenneth to share equally in the responsibilities for the payment of all monthly expenses. It further made permanent a temporary order restraining Mary from "approaching, molesting, speaking to or annoying" Kenneth and the children, and ordering her to vacate the home during the pendency of the action. Mary asserts that misrepresentations were made to her in order to induce her to sign the stipulation, and that she relied upon those misrepresentations. She concludes that the stipulation is void and unenforceable due to the fraud perpetrated upon her.

■ Mary is correct in her statement of the law that an agreement between the parties which is incorporated into the dissolution decree may be revoked or modified upon a showing of fraud. *Pactor v. Pactor* (1979), 181 Ind.App. 329, 391 N.E.2d 1148.

Throughout her testimony Mary stated that she would not have signed the stipulation had she known that Kenneth would ask her to vacate. She stated that she had been told it was just a formality and that she could stay. In addition, she stated that while she was not clear on the papers'

meaning, she had in fact read them. Thus her argument now is that she read the terms of the document which she signed, but believed that they would not be enforced.

■ Mary points out in her brief that the trial court's findings of fact did not address her allegations of fraud. However, she did not request specific findings pursuant to Ind.Rules of Procedure, Trial Rule 52. While she testified that she did not think that the stipulation would be enforced, but that she had read it prior to signing it, there was evidence from which the trial court could have determined that the stipulation was entered into free of fraud. Thus it was not error for the court to adopt and enforce the provisions of the stipulation in the dissolution decree.

■ Mary's final contention is that the trial court abused its discretion in its division of the equity in the marital residence. The disposition of property is within the sound discretion of the trial court, and this Court will only reverse for an abuse of that discretion. *In re Marriage of Rupp* (1983), Ind.App., 449 N.E.2d 1164. The trial court's disposition of the marital assets must be looked at as a whole, not item by item. Thus, in review this Court must determine whether the disposition of the marital assets is clearly against the logic and effect of the facts and circumstances before the court, that is, "just and reasonable" as required by IND.CODE § 31-1-11.5-11(b) and the factors enumerated therein.[4] *See, Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240.

**4.** The section provides:

"(b) ... In determining what is just and reasonable, the court shall consider the following factors:
(1) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;
(2) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;
(3) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;
(4) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;
(5) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

Here, Kenneth had appraised the marital assets and the list of those assets and their values was admitted at trial. Mary only objected to the valuation of one item, a couch which she valued at $800.00, while Kenneth had valued it at only $300.00. Of the parties' personal property, the trial court ordered Kenneth to receive property valued at $12,649.50,[5] and to pay the couple's debt to Kenneth's parents. The $950.00 debt to his parents should be deducted to arrive at his net personal property award of $11,699.50. Mary's award of personal property comes to $12,673.82,[6] and she was ordered to pay the MasterCharge balance and the debt owed to her mother. Those two obligations totalled $583.00; thus her net personal property award is $12,090.82.

The trial court also determined that the marital real property had an equity of $30,629.65. The court ordered that the property be placed for sale, and that upon payment of the mortgage and all costs associated with the sale, the remaining balance was to be divided as follows:

"A. [Mary] shall be paid the lesser of:

(i) the sum of $12,778.07 (representing the Respondent's share of the real estate equity as afore-determined), or

(ii) an amount equal to 45% of the sale price of the real estate after the payment of reasonable sale expenses as aforediscussed,

[less her unpaid share of accumulated household and child-related expenses due pursuant to the stipulation].

"B. The remainder shall then be payable to [Kenneth]."

There was evidence presented at trial that the parties had purchased their assets from their joint incomes, and the incomes were pooled with all debts being paid from that pool account. Other evidence established that Mary's and Kenneth's incomes were essentially identical. There was no evidence which would lead to the conclusion that the parties' earning abilities would be increased or decreased following the dissolution.

As the record reflects evidence on the factors listed in IND.CODE § 31–1–11.5–11(b), and the trial court's disposition of the marital assets is consistent in regard to those factors, the trial court did not abuse its discretion.

The trial court is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.

---

**5.** This figure arrived at by using the item-by-item list of personal property ordered by the court to Kenneth and the stipulated valuation of the property.

**6.** Determined by the same method as Kenneth's.